UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ahntourage Media LLC,
*individually and on behalf of*
*others similarly situated, et al.*,

        Plaintiffs,

        v.

Klarna, Inc.,

        Defendant.

Case No. 2:25-cv-124

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

Klarna, Inc. ("Defendant") moves to dismiss the claims asserted against it by Ahntourage Media LLC ("Ahntourage Media"), Daniel Perez ("Perez"), Dan Becker LLC ("Becker"), and James Gatlin LLC ("Gatlin" and, together with Ahntourage Media, Perez, and Becker, "Named Plaintiffs"). Mot., ECF No. 51. Named Plaintiffs opposed dismissal, Resp., ECF No. 54, and Defendant replied, Reply, ECF No. 59.

For the reasons below, Defendant's motion is **GRANTED in part** and **DENIED in part**.

### I.     BACKGROUND

The following summary draws from the allegations in Named Plaintiffs' Amended Complaint, ECF No. 50, and any documents integral to and incorporated therein.

## A.     Affiliate Marketing Industry

This case involves a group of affiliate marketers alleging that Defendant has been stealing their commissions earned from promoting and generating sales of online products.

Named Plaintiffs are "online content creators, such as journalists, bloggers, podcasters, and YouTubers," who have forged partnerships with e-commerce merchants to promote products and services online.  Am. Compl. ¶ 1, ECF No. 50.  This practice is commonly known as "affiliate marketing."  *Id.*

Named Plaintiffs allege that they, as affiliate marketers, have entered into contractual agreements with merchants such as Walmart, Target, FlexiSpot, and REI.  *Id.* ¶¶ 46–50.  Pursuant to such agreements, merchants provide Named Plaintiffs with affiliate marketing links.  *Id.* ¶ 27.  Each affiliate marketing link is unique to the affiliate marketer.  *Id.*  When an online consumer clicks on Named Plaintiffs' affiliate marketing links, the consumer is directed to the merchant's website, where the consumer can complete their purchase.  *Id.*  Named Plaintiffs explain that the relevant portions of their contracts entitle them to commissions for sales generated through their affiliate links.  *Id.* ¶¶ 46–50.  For example, Ahntourage Media's contract with Staples provides that "'[s]ales generated through the Affiliate link entitle the Affiliate to earn a cash commission,' and that Staples 'will fund payment for all commissions due to Affiliate.'"  *Id.* ¶ 46.

But Named Plaintiffs do not receive credit for merely posting their affiliate marketing links on their social media platforms.  Rather, each affiliate marketing

link contains an "alphanumeric identifier" ("Affiliate ID") that is unique to the affiliate marketer. *Id.* ¶ 27. Once the consumer clicks on the affiliate marketing link, the merchant stores the Affiliate ID from such link in the merchant's website's cookie storage on the consumer's web browser, essentially tracking the consumers' online activity with the Affiliate ID running in the background. *Id.* ¶ 29. If the consumer makes a purchase on the merchant's website while the Affiliate ID is active, then that affiliate marketer associated with that Affiliate ID receives the credit for the sale and, pursuant to the affiliate marketing contracts with that merchant, the merchant pays the affiliate marketer a commission. *Id.* ¶ 30.

That said, if the consumer clicks on a second affiliate marketer's link prior to completing their purchase, then the first affiliate marketer's Affiliate ID is replaced with the second affiliate marketer's Affiliate ID; this process is known as "last click attribution." *Id.* Because, as one can imagine, consumers may interact with various online content creators through a variety of social media platforms before purchasing a product, merchants rely on the last Affiliate ID in the consumer's browser to determine which affiliate marketer earned the commission for that sale. *Id.*

Relevant here, in December 2021, Defendant launched an online browser extension (the "Klarna Browser Extension") that provides consumers with automatic coupons and cashback features to help save consumers time and money in searching the internet for discounts prior to completing online

purchases. *Id.* ¶ 54. Generally, when the consumer is on a merchant's website, if they have downloaded the Klarna Browser Extension, then a pop-up window will appear offering points, coupons, cash back, and other rewards. *Id.* ¶ 61. Consumers can click on the pop-up to activate the Klarna Browser Extension, and, if the Klarna Browser Extension finds the consumer a discount for the product, it is added to the consumer's purchase when they check out. *Id.*

According to Named Plaintiffs, Defendant uses the Klarna Browser Extension to divert commissions from Named Plaintiffs. As described above, when a consumer clicks on a Named Plaintiff's affiliate marketing link, that Named Plaintiff's unique Affiliate ID is running in the background of the consumer's web browser, and, upon the consumer completing an online purchase, the merchant will credit that Named Plaintiff with the purchase. *Id.* ¶ 59. But, if a consumer downloaded the Klarna Browser Extension and clicked the pop-up window to activate the extension prior to completing the purchase, Defendant overwrites that Named Plaintiff's Affiliate ID with its own[1]. *Id.* ¶ 63. And because merchants rely on the last Affiliate ID in the consumer's browser at the time of purchase, merchants send commissions to Defendant instead of that

---

[1] Named Plaintiffs submit a test example via screenshots that show how Ahntourage Media's Affiliate ID could be replaced by Defendant's Affiliate ID when an online consumer activates the Klarna Browser Extension. Compl., ECF No. 50 at PAGEID ## 298–310.

Case No. 2:25-cv-124

Named Plaintiff.[2] *Id.* In Named Plaintiffs' view, by overwriting Named Plaintiffs' Affiliate IDs, Defendant exceeds the authority that consumers gave Defendant when downloading the Klarna Browser Extension and, as a result, Defendant can continue to usurp Named Plaintiffs and other affiliate marketers' commissions. *Id.* ¶ 64.

Named Plaintiffs allege that Defendant's scheme essentially "tricks" the consumer's browser (and merchants, by extension) to credit Defendant for sales even though it was Named Plaintiffs' marketing and affiliate marketing links that drove the consumer to the merchant's website. ¶ 187. As a result, Named Plaintiffs contend that, because of Defendant's alleged conduct, "they are deprived of referral fees and sales commissions to which [they] rightfully entitled." *Id.* ¶¶ 118, 124, 130, 136.

## II. PROCEDURAL HISTORY

In February 2025, Rachel Thompson, on behalf of herself and others similarly situated, filed this action against Defendant. Compl., ECF No. 1. Subsequently, Named Plaintiffs, on behalf of themselves and others similarly situated, filed an Amended Complaint, alleging one claim on behalf of a putative Nationwide Class for violation of the Computer Fraud and Abuse Act ("CFAA"), and three state-law claims on behalf of the Nationwide Class or, in the

---

[2] Named Plaintiffs allege that Defendant also has affiliate marketing partnerships with merchants with which Named Plaintiffs have similar agreements. Am. Compl. ¶¶ 112–136, ECF No. 50.

alternative, putative Florida, Pennsylvania, Texas, and Wisconsin Subclasses:[3] (1) tortious interference with business relationships; (2) tortious interference with contractual relations; and (3) unjust enrichment. *See generally* Am. Compl., ECF No. 50.

Defendant now moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot., ECF No. 51.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for lack of subject-matter jurisdiction. Without subject-matter jurisdiction, a federal court lacks authority to hear a case. *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 91 (2017) (citation omitted). "Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack under Rule 12(b)(1) "is a challenge to the sufficiency of the pleading itself," and the trial court therefore takes the allegations of the complaint as true. *Id.* (citation omitted). To survive a facial attack, the complaint must contain a "short and plain statement of the grounds" for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016) (internal quotation marks and citations omitted).

_____

[3] Ahntourage Media is incorporated in and has its principal place of business in Pennsylvania. *Id.* ¶ 11. Perez is a Florida resident. *Id.* ¶ 12. Gatlin is incorporated in and has its principal place of business in Texas. *Id.* ¶ 13. Becker is incorporated in and has its principal place of business in Wisconsin. *Id.* ¶ 14.

A claim survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Twombly*, 550 U.S. at 556. A pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (internal citations omitted).

At the motion-to-dismiss stage, a district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wamer v. Univ. Toledo*, 27 F.4th 461, 466 (6th Cir. 2022) (internal quotation marks and citations omitted). However, the non-moving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## IV.   ANALYSIS

Defendant seeks to dismiss Named Plaintiffs' claims under the CFAA and state law. Mot., ECF No. 51. Defendant argues that Named Plaintiffs lack Article

III standing to bring their claims and fail to state a claim in any event. *Id*. The Court will address each argument in turn.

## A.    Subject-Matter Jurisdiction

Defendant moves to dismiss Named Plaintiffs' claims for lack of standing. Pursuant to Article III of the United States Constitution, federal jurisdiction is limited to "cases" and "controversies," and standing is "an essential and unchanging part of" this requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). If a plaintiff lacks standing, then the federal court lacks jurisdiction. *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019). Thus, standing is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Article III standing has three elements. "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). Second, the injury must be "fairly traceable to the challenged action of the defendant." *Id*. (cleaned up). Third, it must be likely that the injury will be "redressed by a favorable decision." *Id*. at 561 (internal quotation marks and citation omitted).

The burden is on the party invoking federal jurisdiction to demonstrate Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) (citing *Lujan*, 504 U.S. at 561). That party must support each element of

standing with the "manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561 (citing cases).  Thus, "[a]t the pleadings stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* (citation omitted).

Defendant argues that Named Plaintiffs do not have standing because they allege neither an actual injury nor causation.  Mot., ECF No. 51 at PAGEID ## 351–52.  The Court disagrees.

The Amended Complaint sufficiently alleges that Named Plaintiffs were injured.  Indeed, Named Plaintiffs allege that: (1) they are affiliate marketers; (2) as such, they regularly partnered with online merchants to earn commissions revenue from promoting products and posting affiliate marketing links on their social media platforms to generate sales; and (3) that they were injured by Defendant's conduct of replacing Named Plaintiffs' Affiliate IDs with its own to steal Named Plaintiffs' commissions. Am. Compl. ¶¶ 112–36, ECF No. 50.  Each Named Plaintiff specifically alleges that "[w]hen the Klarna Browser Extension overwrites and replaces [Named Plaintiffs'] affiliate tracking code with [Defendant's] tracking code, [Named Plaintiffs] are deprived of referral fees and sales commissions to which [they were] rightfully entitled.  [Named Plaintiffs] would have earned more in commissions but for [Defendant's] scheme to steal commissions via the Klarna Browser Extension.  Through the [Klarna Browser Extension], Defendant stole credit for sales that [Named Plaintiffs] generated with

[their] affiliate links." *Id.* ¶¶ 118, 124, 130, 136.  Accepting these allegations as true, Named Plaintiffs have alleged an injury-in-fact and causation.

Regarding causation, the above alleges that the injury is traceable to Defendant's conduct.  Moreover, Named Plaintiffs submitted a test example via screenshots demonstrating the alleged scheme based on an affiliate marketing link posted on Ahntourage Media's YouTube channel.  Am. Compl., ECF No. 50 at PAGEID ## 298–310.  Named Plaintiffs first show that Ahntourage Media posted a YouTube video promoting a walking pad available on FlexiSpot and that an affiliate marketing link for the walking pad was included in that post.  *Id.* When an online consumer clicks on Ahntourage Media's affiliate marketing link, the online consumer is taken to FlexiSpot's website to purchase the product, and, because Ahntourage Media's Affiliate ID is still attached, Ahntourage Media would receive a commission when the consumer completes the purchase.  *Id.*

Named Plaintiffs show, however, that the consumer has downloaded the Klarna Browser Extension, Defendant's pop-up screen appears prior to checkout to offer the consumer "12% in points."  *Id.*  And when the consumer clicks on the pop-up, Ahntourage Media's Affiliate ID is replaced with Defendant's.  *Id.*  Thus, Defendant would receive the commission when the consumer completes the purchase after clicking Defendant's pop up.  *Id.*  These allegations are sufficient to show causation.  *See, e.g.*, *In re Cap. One Fin. Corp.*, No. 1:25-cv-23, 2025 WL 1570973, at *5–6 (E.D. Va. Jun. 2, 2025) (finding that, at the pleadings stage, the affiliate marketer plaintiffs plausibly alleged an injury, the defendant's browser

extension was stealing their commissions, and they sufficiently alleged that their injury was traceable to the defendant's conduct based on an expert test purchase and statistical analysis).

In arguing for dismissal, Defendant relies on a recent decision in the Northern District of California, which concluded that similar allegations are insufficient. Supp. Auth., ECF No. 60 (citing *Wendover Productions, LLC v. Paypal Inc.*, No. 5:24-cv-9470, 2025 WL 3251667, at *2–4 (N.D. Ca. Nov. 21, 2025) (finding that the plaintiffs failed to allege standing because, unlike in *Capital One,* they did not "actually show that any plaintiff in fact lost out on a commission").

But *PayPal* is not binding authority. And, as stated above, the Court must consider standing using the "manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561 (citing cases). Surely, on summary judgment, general allegations will not suffice, and Named Plaintiffs would have to *prove* that Defendant in fact injured them. But where, as here, this case is at the pleadings stage, Named Plaintiffs need not *prove* they were injured to establish standing; rather, it is sufficient that they *allege* that they were injured. *See Harris v. Lexington-Fayette Urban Cnty. Gov't*, 685 F. App'x. 470, 471 (6th Cir. 2017) ("Ordinarily, to establish Article III standing at the motion-to-dismiss stage, a plaintiff need only 'allege' that she has suffered an injury traceable to the defendant's conduct and likely to be redressed by the requested relief." (citation omitted)); *see also Grant v. Ramaswamy*, No. 2:24-cv-281, 2024 WL 1507975, at

*3 (S.D. Ohio Apr. 5, 2024).  Named Plaintiffs have done so.  *In re Cap. One Fin. Corp.*, 2025 WL 1570973, at *5–6.

Thus, Named Plaintiffs have standing to pursue their claims, and the Court has subject-matter jurisdiction.  Accordingly, Defendant's motion to dismiss for lack of subject-matter jurisdiction is **DENIED**.

## B.    Failure to State a Claim

Defendant next argues that Named Plaintiffs fail to state claims for (1) violation of the CFAA; (2) tortious interference with business relationships and/or contracts; and (3) unjust enrichment.  Mot., ECF No. 51.  The Court disagrees.

### 1.    CFAA claim.

To state a clam under 18 U.S.C. § 1030(a)(4), "[Named] Plaintiffs must allege (1) a qualifying 'loss' of at least $5,000, and (2) knowing and intentional unauthorized access" to a protected computer.  *In re Cap. One Fin. Corp.*, 2025 WL 1570973, at *12 (citing 18 U.S.C. §§ 1030(a)(4), (g)).  A "loss" includes lost revenue "because of interruption of service."  *Id.* (finding that the defendant's alleged conduct interrupted the commission attribution process, causing lost revenue (citing 18 U.S.C. § 1030(e)(11)).  Similarly, the CFAA provides that, though an online consumer may authorize some conduct, a defendant violates the federal statute if it "exceed[s] authorized access."  *Id.* (holding that the defendant exceeded the access authorized by consumers that downloaded its browser extension when it overwrote the plaintiffs' affiliate IDs).

Here, Named Plaintiffs have plausibly alleged a CFAA violation.  First, Named Plaintiffs allege that Defendant's conduct in overwriting Named Plaintiffs' Affiliate IDs "disrupted the commission attribution process, including communications between the merchants' websites and servers that attributed the sale to a Class Member," and, because of such disruption, they have "suffered damages and loss well in excess of $5,000."  Am. Compl. ¶ 165, ECF No. 50. Second, Named Plaintiffs allege that consumers that downloaded the Klarna Browser Extension gave Defendant some access and authorization to their computers.  *Id.* ¶ 158.  But Defendant allegedly exceeded its authorization because consumers did not authorize Defendant to "trick" the consumer's browser history and alter or overwrite "legitimate" Affiliate IDs with "illegitimate" Affiliate IDs.  *Id.* ¶ 60.  At bottom, Named Plaintiffs allege that Defendant, knowingly and with the intent to defraud, exceeded the authority consumers granted, which conduct injured Named Plaintiffs.  Accordingly, Defendant's motion to dismiss the CFAA claim is **DENIED**.

### 2. Tortious-Interference Claims

To establish claims for tortious interference with a business relationship ("tortious interference") under Ohio law,[4] Named Plaintiffs must show: (1) "a

---

[4] Named Plaintiffs have not alleged why Ohio law would apply to a Nationwide Class. Generally, when a putative class contains members from several states, courts must undertake a choice of law analysis to determine which states' laws apply to plaintiffs' claims. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945–46 (6th Cir. 2011).  Under those rules, the law of the place of injury often controls, meaning that the laws of potential class members' home states may govern their claims.  *Id.*  And though this case is at the motion-to-dismiss stage, the Court observes that there may be no

business relationship"; (2) "the tortfeasor's knowledge thereof"; (3) "an intentional interference causing a breach or termination of the relationship"; and (4) "damages."  *Casale v. Nationwide Child.'s Hosp.*, No. 2:11-cv-1124, 2012 WL 13024407, at *3 (S.D. Ohio Aug. 2, 2012) (citing Ohio law).

Similarly, "[t]o recover on a claim of tortious interference with contract, a plaintiff must establish: '(1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) lack of justification or privilege; and (5) resulting damages.'"  *Shepard & Assocs. v. Lokring Tech.*, LLC, No. 1:20-CV-2488, 2021 WL 1061893, at *11–12 (N.D. Ohio Mar. 19, 2021).

------

predominance for class certification purposes where the laws of multiple jurisdictions apply to a class action.  *See id.* at 947 (concluding that because the "laws of the State where each injury took place would govern these claims . . . no common legal issues favor a class-action approach").

Named Plaintiffs have not alleged that tortious interference under Ohio law is sufficiently similar to that under other states' laws to warrant nationwide application here.  Nevertheless, because the parties briefed Ohio law and because the state laws for each putative Subclass are similar to Ohio law, the Court will apply the same analysis and conclusions for each individual state law at the motion-to-dismiss stage. *See Columna, Inc. v. Cigna Health & Life Ins. Co.*, No. 19-80170, 2019 WL 7899137, at *7 (S.D. Fla. Oct. 10, 2019) (applying Florida law for tortious interference with business relationships claim); *Skytruck Co., LLC v. Sikorsky Aircraft Corp.*, No. 2:09–cv–267, 2011 WL 13137383, at *3 (M.D. Fla. Mar. 16, 2011) (applying Florida law for tortious interference with contracts claim); *S.V.B. Assocs. v. Lomb*, No. 2:19-cv-1575, 2020 U.S. Dist. LEXIS 179937, at *22–23 (W.D. Pa. Sept. 30, 2020) (applying Pennsylvania law); *Wesdem v. Ill. Tool Works*, No. SA-20-CV-00987, 2021 WL 4053414, at *8 (W.D. Tex. Mar. 12, 2021) (applying Texas law); and *Metso Mins. Indus., Inc. v. FLSmidth-Excel LLC*, No. 07–CV–926, 2010 WL 55845, at *4 (E.D. Wis. Jan. 5, 2010) (applying Wisconsin law on summary judgment and, notably, Wisconsin law mirrors Ohio's elements except one of the elements requires "interference with a contractual right," not actual breach of contract).

Though tortious-interference-with-business-relationships claims are similar to tortious-interference-with-contract claims, Ohio courts recognize that "tortious interference with a business relationship 'occurs when the result of the improper interference is not a breach of contract, but the refusal of a third party to enter into or continue a business relationship with the plaintiff.'" *Inwood Vill., LTD. v. Christ Hosp.*, No. C-110730, 2012 WL 3104407, at * 3–4 (Ohio Ct. App. Aug. 1, 2012) (citation omitted).

As to their business relationships, Named Plaintiffs have not stated a tortious interference claim. To be sure, Named Plaintiffs allege that they have established affiliate marketing relationships with various merchants. Am. Compl. ¶¶ 118, 122, 128, 135, ECF No. 50. Named Plaintiffs market the merchants' products on their platforms and refer consumers to the merchants' website via affiliate marketing links, and, in exchange, the merchants pay Named Plaintiffs commissions for sales generated from such referrals. *Id.* ¶ 168. Named Plaintiffs assert that Defendant interfered with such relationships by causing merchants to pay Defendant, instead of Named Plaintiffs, for commissions that Named Plaintiffs earned. *Id.* ¶ 173.

Named Plaintiffs, however, have not alleged that any merchants terminated, refused to renew, or decided not to enter into business relationships with Named Plaintiffs because of Defendant's conduct. If anything, Named Plaintiffs plead that their merchant relationships are "ongoing" and that they "expect to continue earning commissions in exchange for referrals." *Id.* ¶ 168.

"Absent some factual allegation that [Defendant's] actions ended or prevented a business relationship, [Named Plaintiffs] do[ ] not state a claim." *Wilkey v. Hull*, 366 F. App'x. 634, 638 (6th Cir. Feb. 2010) (applying Ohio law) (citation omitted). Thus, Defendant's motion to dismiss as to Named Plaintiffs' tortious interference with business relationships claim is **GRANTED**.[5]

Named Plaintiffs have stated a claim for tortious interference with a contract, however.  As discussed above, Named Plaintiffs allege that they entered into contractual agreements with merchants such as Staples, Walmart, Target, FlexiSpot, and REI.  Am. Compl. ¶¶ 46–50, ECF No. 50.  They further explain that the relevant portions of such contracts indicate that they are entitled to commissions for sales generated through their affiliate links.[6]  *Id.*   And, according to Named Plaintiffs, Defendant, through the Klarna Browser Extension, knew (1) about those contracts, and (2) that merchants rely on Affiliate IDs to determine who should be credited with the consumer's purchase and receive the commission.  *Id.* ¶¶ 179, 181.  Critically, Defendant's alleged conduct—switching out Named Plaintiffs' Affiliate ID with its own—caused the merchants to breach

_____

[5] In the event the Court found deficiencies in their Amended Complaint, Named Plaintiffs requested an opportunity to amend their complaint.  Resp., ECF No. 54 at PAGEID # 460.  But "[a] request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is ... not a motion to amend such that Rule 15(a)(2) applies."  To the extent Named Plaintiffs seek leave to amend, they must file a motion.  *Robertson v. Univ. of Akron Sch. of Law*, No. 21-3768, 2022 WL 1836922, at *5 (6 Cir. Jun. 3, 2022) (citation and internal quotation marks omitted)

[6] For example, Ahntourage Media's contract with Staples provides that "'[s]ales generated through the Affiliate link entitle the Affiliate to earn a cash commission,' and that Staples 'will fund payment for all commissions due to Affiliate.'" *Id.* ¶ 46.

Named Plaintiffs' contracts, causing various merchants to wrongfully pay Defendant commissions for sales generated from Named Plaintiffs' affiliate marketing links. *Id.* ¶ 180. At bottom, Named Plaintiffs have sufficiently alleged Defendant's interference caused merchants to breach Named Plaintiffs' affiliate marketing contracts.

Even so, Defendant argues that Named Plaintiffs' tortious interference with contract claim is barred because its conduct is privileged.[7] Mot., ECF No. 51 at PAGEID # 359. "A crucial element of the [tortious interference claim] is that the alleged interference was not privileged or justified." *Inwood Vill., LTD.*, 2012 WL 3104407, at *4 (citation omitted). In deciding whether the alleged conduct was privileged or justified, courts generally consider the following factors:

> (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests of the party with whom the actor has interfered, (4) the interests sought to be advanced by the actor, (5) the social interests of protecting the freedom of contracting and the interference with such, (6) the proximity or remoteness of the actor's conduct to the interference, and (7) the relations between the parties.

*Shepard & Assocs.*, 2021 WL 1061893, at *12 (citation omitted). Courts primarily consider the "nature of the actor's conduct" factor. *Id.*

Named Plaintiffs sufficiently allege that Defendant's tortious interference with their contracts lacked justification. Am. Compl. ¶ 180, ECF No. 50. They

---

[7] The individual state laws for the putative subclasses, like Ohio law, recognize an "privilege or justification" element to a tortious interference claim. *See Jay v. Mobley*, 783 So.2d 297, 299 (Fla. Dist. Ct. App. 2001) (applying Florida law); *S.V.B. Assocs. v. Lomb*, 2020 U.S. Dist. LEXIS 179937, at *25 (applying Pennsylvania law); *Wesdem v. Ill. Tool Works*, 2021 WL 4053414, at *8 (applying Texas law); and *Metso Mins. Indus., Inc.*, 2010 WL 55845, at *5–6 (applying Wisconsin law).

contend that Defendant's conduct was "wrongful, improper, and without justification" because it violates the CFAA and it relies on prohibited practices such as "cookie stuffing" and other methods to divert affiliate commissions. *Id.* At the pleading stage, Named Plaintiffs have sufficiently alleged that Defendant's conduct had no privilege or justification to defeat their tortious interference claims.

Thus, Defendant's motion to dismiss as to the tortious interference with contract claim is **DENIED**.

### 3. Unjust Enrichment Claim

To establish their unjust enrichment claim under Ohio law,[8] Named Plaintiffs must allege "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Scaccia v. Lyft, Inc.*, No. 3:21-cv-29, 2021 WL 4355521, *2 (S.D. Ohio Sept. 24, 2021) (applying Ohio law) (citation omitted).

Here, Named Plaintiffs sufficiently allege unjust enrichment. First, Named Plaintiffs allege that they conferred a benefit on Defendant. Through Named

---

[8] Again, Named Plaintiffs do not allege why Ohio law should apply to an unjust enrichment claim brought by a nationwide class. But the Court uses Ohio law here, in part because unjust enrichment claims under Florida, Pennsylvania, Texas, and Wisconsin common law apply a similar standard as Ohio law. *See Columna, Inc.*, 2019 WL 7899137, at *5 (applying Florida law); *S.V.B. Assocs. v. Lomb*, 2020 U.S. Dist. LEXIS 179937, at *23–25 (applying Pennsylvania law); *Wesdem*, 2021 WL 4053414, at *18 (applying Texas law); *BMO Harris Bank, N.A. v. Berkovitz*, No. 20-C-546, 2020 U.S. Dist. LEXIS 183707, at *6 (E.D. Wis. Oct. 2, 2020) (applying Wisconsin law).

Plaintiffs' actions of promoting products on their respective social media platforms and using their affiliate marketing links to drive consumers to make online purchases on merchants' websites, Defendant was able to capitalize on Named Plaintiffs' efforts by replacing Named Plaintiffs' Affiliate ID with its own and collecting commissions.  Am. Compl. ¶¶ 187, ECF No. 50; *In re Cap. One Fin. Corp.*, 2025 WL 1570973, at *7 (finding that, at this stage in the litigation, the plaintiffs have at least plausibly alleged a benefit—namely, "that [the p]laintiffs caused a consumer's placement on an affiliated merchant's website, at which point Capital One took advantage of that placement and knowingly diverted the benefits of that placement, not otherwise available to Capital One, from the [p]laintiffs to itself."); *Fed. Ins. Co. v. Prebles*, 2011 U.S. Dist. LEXIS 173319, at *9-10 (S.D. Ohio Feb. 3. 2011) (finding that a benefit was conferred even if it was conferred without the plaintiff's (via the company that the plaintiff insured) knowledge).

Second, Named Plaintiffs allege that Defendant knew, through the Klarna Browser Extension, when a consumer used Named Plaintiffs' affiliate marketing link to navigate to an online merchant's website and that, when the Klarna Browser Extension was activated, the extension would overwrite or displace the Named Plaintiffs' Affiliate ID.  *Id.* ¶¶ 110–11.

Finally, Named Plaintiffs allege that they lost out on commissions and sales revenue because of Defendant's conduct, and it would be unjust under the

circumstances for Defendant to retain this benefit without payment. *Id.* ¶ 196.

Such allegations are sufficient to survive dismissal.

Thus, Defendant's motion to dismiss the unjust enrichment claim under

Ohio law for the Nationwide Class and certain state laws for the Subclasses is

**DENIED**.

## V.  CONCLUSION

For these reasons, Defendant's motion to dismiss, ECF No. 51, is

**GRANTED in part** and **DENIED in part**.  Named Plaintiffs' tortious interference

with business relationships claim (Count II) is **DISMISSED WITHOUT**

**PREJUDICE**.  The CFAA and state-law claims for tortious interference with

contract and unjust enrichment claims, however, survive.

The Clerk is **DIRECTED** to update the case caption to reflect that Rachel

Thompson is no longer a Named Plaintiff in this case.

The Clerk shall terminate ECF No. 51.

**IT IS SO ORDERED**.

_____
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**